IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANGELA VANBUREN | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) ) |
| VIRGINIA HIGHLANDS ORTHOPAEDIC SPINE CENTER, LLC, <br> <u>Serve</u>: Registered Agent <br> Stephen A. Grubb <br> 1157 Christiansburg Pike NE <br> Floyd, VA 24091 <br><br> AND <br><br> STEPHEN A. GRUBB, M.D. <br> <u>Serve</u>: 1157 Christiansburg Pike NE <br> Floyd, VA 24091 <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 7:10-cv-00132 |

## AMENDED COMPLAINT

### I. PRELIMINARY STATEMENT

1.  Plaintiff, Angela VanBuren, ("Ms. VanBuren"), by counsel, seeks damages, including compensatory damages and punitive damages for the violation of her rights on the following grounds:

    a. Gender discrimination (sexual harassment, hostile work environment, and retaliation) pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a), 42 U.S.C. § 1981a, and the common law of Virginia; and

    b. Wrongful termination of her employment pursuant to the common law of Virginia.

LAW OFFICES
GENTRY LOCKE
RAKES & MOORE LLP
ROANOKE, VIRGINIA

18358/1/3271800v1

## II. PARTIES, JURISDICTION, AND VENUE

2. Ms. VanBuren is an adult female and resident of 152 Shepards Lane, Tazewell, Virginia.

3. Defendant Virginia Highlands Orthopaedic Spine Center, LLC ("Virginia Highlands") is a Virginia limited liability company with its principle place of business in Chapel Hill, North Carolina.

4. Defendant Stephen A. Grubb, M.D. ("Dr. Grubb") is an adult male and resident of 1157 Christiansburg Pike NE, Floyd, Virginia.

5. The Court has personal jurisdiction over Virginia Highlands and Dr. Grubb as both reside in Virginia and are subject to personal service of process in Virginia.

6. The Court has federal question subject matter jurisdiction over Ms. VanBuren's claims pursuant to 28 U.S.C. § 1331 as Ms. VanBuren's claims involve claims for sexual harassment, sexual hostile work environment, and retaliation under 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a).

7. The Court has supplemental jurisdiction over Ms. VanBuren's common law wrongful discharge claim pursuant to 28 U.S.C. § 1367 as Ms. VanBuren's claim is so related to the claims within the Court's original jurisdiction "that they form part of the same case or controversy."

8. Venue is proper in the United States District Court for the Western District of Virginia under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to these claims occurred in this district. Similarly, the Roanoke Division is the proper division under Amended Standing Order Regarding Divisions for the United States District Court for the Western District of Virginia.

9. Ms. VanBuren has satisfied all of the procedural and administrative requirements set forth in Section 706 of Title VII, 42 U.S.C. § 2000e-5, in particular:

LAW OFFICES
GENTRY LOCKE
RAKES & MOORE
ROANOKE, VIRGINIA

2

18358/1/3271800v1

    a. Ms. VanBuren filed a timely written charge of gender discrimination with the United States Equal Employment Opportunity Commission ("EEOC").

    b. Ms. VanBuren received a "Notice of Right to Sue" from the EEOC.

    c. The complaint in this matter was filed with this court within 90 days from the receipt of the "Notice of Right to Sue."

### III. FACTUAL ALLEGATIONS

10. On December 1, 2003, Ms. VanBuren began her employment at Virginia Highlands as a Registered Nurse and First-Assist Spine Specialty Nurse to Dr. Grubb.

11. At all relevant times, Virginia Highlands was an "employer" as that term is defined in 42 U.S.C. § 2000e(b) as it is a company "engaged in an industry affecting commerce who ha[d] fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." Virginia Highlands is thus covered by and subject to Title VII of the Civil Rights Act of 1964.

12. At all relevant times, Dr. Grubb was in private practice for himself at Virginia Highlands and was the owner and medical director of Virginia Highlands.

13. At all relevant times, Ms. VanBuren worked under and reported directly to Dr. Grubb as her supervisor.

14. No more than ten days after beginning her employment, Ms. VanBuren became the object of a continuing pattern of sexual harassment and derogatory conduct by Dr. Grubb that included unwelcomed and sometimes frightening contact, fondling, and touching of Ms. VanBuren's body.

15. For example, Dr. Grubb would hug her, rub her back, waist, breast and other inappropriate areas, and attempt to kiss her, all against her will and protests.

16. At all relevant times, Ms. VanBuren would pull away from Dr. Grubb, insist that he

stop his sexual advances, and remind him that he was a married man.

17. On one occasion, after resisting Dr. Grubb's grabbing, fondling and kissing, Dr. Grubb admitted that "maybe he got a little carried away and she may have to tell him to take a cold shower sometimes," or words to that effect.

18. On several occasions after working long hours, Dr. Grubb would wait for Ms. VanBuren outside the women's locker room at Virginia Highlands. Ms. VanBuren would try to avoid Dr. Grubb by remaining in the locker room as long as she could in hopes that Dr. Grubb would grow tired of waiting on her. However, Dr. Grubb would pace outside the women's locker room until she reluctantly came out and attempt to hug, fondle, and kiss her.

19. Dr. Grubb's acts of pacing outside the women's locker room aroused suspicions in other employees' minds regarding Dr. Grubb's intentions. For instance, one co-worker was concerned about Dr. Grubb's behavior and began walking Ms. VanBuren out of the medical facility to her car in order to help her avoid Dr. Grubb's offensive advances.

20. On other occasions, Dr. Grubb would write Ms. VanBuren love poems.

21. Ms. VanBuren approached Dr. Grubb several times and explained to him that she was uncomfortable with his offensive, unwelcomed conduct and wanted him to stop.

22. Ms. VanBuren informed Dr. Grubb that she was bothered by the fact that other employees seemed to notice Dr. Grubb's lewd behavior and suspected that the two were engaged in an affair. However, gossip did not deter Dr. Grubb's sexual advances because he stated that he did not care what other people thought.

23. In May 2006, Ms. VanBuren, along with other employees, was assisting Dr. Grubb in setting up a new office in Radford, Virginia, during which time the employees stayed at a local hotel to avoid a long commute home. On this particular evening, Dr. Grubb insisted on walking Ms. VanBuren to her hotel room after she told him not to.

LAW OFFICES
GENTRY LOCKE
RAKES & MOORE
ROANOKE, VIRGINIA

4

24. At such time, Dr. Grubb pushed his way into her room and began rubbing her back, waist, breast, and hair while stating that he loved her. Ms. VanBuren stood stiff in a state of shock as being caught off guard by Dr. Grubb's lewd and disgusting behavior until he started trying to pull her down unto his lap. At which point she gained enough strength and consciousness to free herself from his grips and stated that she was not going to have sex with him, he was a married man, and he needed to leave.

25. Although Ms. VanBuren continued to protest against his offensive actions, he persisted in his attempts and again stated that he loved her. At this point, Ms. VanBuren became increasingly upset and began to raise her voice until Dr. Grubb desisted his attack and left her room.

26. For the next few days following the hotel incident, Dr. Grubb apologized to Ms. VanBuren, stating that he was sorry for making her feel uncomfortable and that "it was hard for him sometimes because she was so beautiful and that she may have to throw cold water on him sometimes," or words to that effect.

27. In December 2007, Ms. VanBuren married David VanBuren. The harassment perpetrated by Dr. Grubb soon began to wreak havoc on Ms. VanBuren's marriage.

28. Dr. Grubb attempted to seize the opportunity to "console" Ms. VanBuren regarding her marital problems. His "consoling" took the form of encouraging Ms. VanBuren to leave her husband and then proceeding to hug, kiss, and grope her. However, Ms. VanBuren continued to insist that his advice and sexual advances were unwelcomed and offensive.

29. On March 19, 2008, six days before her termination, Dr. Grubbs required Ms. VanBuren to meet in his office behind closed doors. He began the conversation by stating his concern for Ms. VanBurn's marriage. He suggested that she and her husband should "split because it would be in her best interest," or words to that effect. While attempting to hug and kiss Ms. VanBurn, he restated his love and care for her and stated that "with her husband gone she could

5

accept his love for what it was and what it could be," or words to that effect.

30. On March 25, 2008, not even four months since her marriage, Dr. Grubb called Ms. VanBuren into his office after work. He asked her whether she planned on staying with her husband, and when she responded in the affirmative, he fired her. He then offered her five weeks severance pay to remain silent about the sexual harassment she had endured from him throughout her employment. Dr. Grubb offered her no other explanation for terminating her employment.

31. This final act of discrimination was the culmination of several years of harassment that Ms. VanBuren endured to keep her job.

32. Throughout her employment, Ms. VanBuren repeatedly refused all advances by Dr. Grubb.

33. Throughout her employment, Dr. Grubb's conduct negatively impacted her work environment to the point that Ms. VanBuren became upset and distracted at work and was the constant target of scrutiny by her co-workers.

34. Throughout her employment, Ms. VanBuren repeatedly complained and reported Dr. Grubb's sexual harassment to the only supervisor, medical director and human resources director available at Virginia Highlands, Dr. Grubb, who was unwilling to remedy his unacceptable behavior.

35. Dr. Grubb fired Ms. VanBuren because she was persistent in opposing his sexual harassment by repeatedly complaining about and refusing to consent to his sexual advances.

## COUNT 1 – GENDER DISCRIMINATION (SEXUAL HARASSMENT, HOSTILE WORK ENVIRONMENT, AND RETALIATION)

36. Ms. VanBuren realleges and incorporates by reference all prior paragraphs herein.

37. The acts alleged in paragraphs 14 through 35 were directed at Ms. VanBuren because she was a female.

38. The acts of Dr. Grubb created a hostile work environment characterized by sexual harassment.

39. Dr. Grubb's conduct was both severe and pervasive.

40. At all relevant times, defendant Virginia Highlands had an obligation to maintain a work environment free from sexual harassment, discrimination, and hostile to Ms. VanBuren and other women.

41. At all relevant times, Ms. VanBuren opposed this work environment permeated with sexual harassment, discrimination, and hostility by complaining to Dr. Grubb and insisting that it stop.

42. Defendant Virginia Highlands violated federal law by permitting a work environment to exist that was sexually charged, hostile, intimidating, and offensive to Ms. VanBuren.

43. Defendant Virginia Highlands violated federal law by discharging Ms. VanBuren in retaliation for her complaints concerning Dr. Grubb's discriminatory behavior and her refusal to participate in discriminatory behavior at his request.

44. The acts and omissions described above constitute sexual harassment, sexual hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a).

45. As a direct and proximate result of the acts and omissions of defendant Virginia Highlands in allowing a work environment charged with sexual harassment and discrimination, Ms. VanBuren has suffered from a host of physical and emotional injuries including, but not limited to, lost salary, lost employee benefits, lost raises, loss of reputation, shame, embarrassment, humiliation, pain, suffering, great mental anguish, anxiety, and distress.

46. Defendant Virginia Highlands is liable for punitive damages because, at all relevant

times, defendant Virginia Highlands intentionally engaged in discriminatory practices and acted with malice and/or reckless indifference to Ms. VanBuren's federally protected rights.

### COUNT II – WRONGFUL DISCHARGE

47. Ms. VanBuren realleges and incorporates by reference all prior paragraphs herein.

48. At all relevant times, Dr. Grubb was a married man.

49. From December 2007 until March 25, 2008, the date of her discharge, Ms. VanBuren was married.

50. Throughout her employment, Dr. Grubb repeatedly sought to have Ms. VanBuren engage in a sexual relationship with him.

51. The Commonwealth's public policy is violated when a female employee, married or unmarried, must consent to the commission of a crime against her person and/or to engage in a conspiracy to commit a crime to maintain her employment. See Mitchem v. Counts, 259 Va. 179, 523 S.E.2d 246 (2000). This public policy is embodied in Virginia Code Section 18.2-365, which prohibits adultery, and 18.2-345, which prohibits lewdness and lasciviousness.

52. Furthermore, these criminal statutes were enacted to protect the "personal freedoms, health, safety, [and] welfare of the general public," and Ms. VanBuren is a member of the class of persons these statutes were designed to protect. See Mitchem, 259 Va. 179, 523 S.E.2d 246.

53. Virginia Code Section 18.2-365 provides that any married person who voluntarily has sexual intercourse with any person other than his or her spouse is guilty of the crime of adultery.

54. At all relevant times, Dr. Grubb was married, but married to a woman other than Ms. VanBuren.

55. By demanding that Ms. VanBuren, married or unmarried, engage in a sexual relationship with him to maintain her employment, Dr. Grubb was demanding that she commit adultery, conspiracy to commit adultery, or both.

56. Virginia Code Section 18.2-345 provides that any person, married or unmarried, engaging in open and gross lewdness and lasciviousness is guilty of the crime of lewd and lascivious cohabitation.

57. At all relevant times, Dr. Grubb's indecent and sexually charged acts occurred not only behind closed office doors, but also outside the women's locker room, during Ms. VanBuren's walks to the parking lot, and, at least one instance, in a hotel room.

58. By demanding that Ms. VanBuren, married or unmarried, participate in Dr. Grubb's open and gross lewd and lascivious behavior to maintain her employment, Dr. Grubb was demanding that she commit or conspire to commit lewd and lascivious cohabitation or both.

59. As a member of the general public, Ms. VanBuren was directly entitled to her personal freedom, health, safety and welfare.

60. Dr. Grubb engaged in a campaign of ever-increasing harassment because Ms. VanBuren was steadfast in her refusal to commit adultery and acts of lewdness and lasciviousness. Ms. VanBuren's persistent refusal eventually led to her discharge.

61. Because she was discharged for not committing criminal acts at the request of Dr. Grubb and because she was a member of the general public whom the criminal statues were designed to protect, her discharge violates Virginia public policy.

62. The acts and omissions of the defendants in discharging Ms. VanBuren because she refused to leave her husband in order to engage in an exclusive, indecent, sexual relationship with Dr. Grubb constitutes wrongful discharge in violation of Virginia public policy. See Bowman v. State Bank Keysville, 229 Va. 534, 331 S.E.2d 797 (1985).

63. As a direct and proximate result of the acts and omissions of the defendants in unlawfully discharging Ms. VanBuren, she has suffered from a host of physical and emotional injuries including, but not limited to, lost salary, lost employee benefits, lost raises, loss of

LAW OFFICES
GENTRY LOCKE
RAKES & MOORE LLP
ROANOKE, VIRGINIA

18358/1/3271800v1

9

reputation, shame, embarrassment, humiliation, pain, suffering, great mental anguish, anxiety, and distress.

## PRAYER FOR RELIEF

WHEREFORE, Angela VanBuren respectfully prays this Court enter judgment against Virginia Highlands Orthopaedic Spine Center, LLC and Stephen A. Grubb, M.D. as follows:

1. Compensatory damages in an amount to be determined, together with prejudgment interest on said amount pursuant to Virginia Code Section 8.01-382 (1950) (as amended);

2. Punitive damages in an amount to be determined;

3. Back pay together with prejudgment interest, reimbursement for lost fringe benefits, training and promotional opportunities, cost of obtaining new employment, lost future wages, and other appropriate relief to redress the discriminatory practices complained of herein;

4. Her costs, reasonable attorney's fees as provided in 42 U.S.C. § 2000e-5(k) and disbursements; and

5. An award of such further relief as the Court may deem appropriate.

**The plaintiff, Angela VanBuren, requests a trial by jury of all matters triable to a jury.**

ANGELA VANBUREN

By: s/Paul G. Klockenbrink
Of Counsel

Paul G. Klockenbrink (VSB No. 33032)
GENTRY LOCKE RAKES & MOORE LLP
800 SunTrust Plaza
P.O. Box 40013
Roanoke, Virginia 24022-0013
Telephone: (540) 983-9300
Fax: (540) 983-9400
   *and*
Michael F. Gibson, Esq.
Gibson, Lefler & Associates
1345 Mercer Street
Princeton, WV 24740-3033
Telephone: (304) 425-8276
Fax: (304) 487-1574
   *Counsel for Plaintiff*