CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

JUL 28 2010

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANGELA VANBUREN, <br> Plaintiff, | Civil Action No. 7:10CV00132 |
| v. | **MEMORANDUM OPINION** |
| VIRGINIA HIGHLANDS <br> ORTHOPAEDIC SPINE CENTER, LLC, | |
| and | |
| STEPHEN A. GRUBB, M.D., <br> Defendants. | By: Hon. James C. Turk <br> Senior United States District Judge |

This matter is presently before the Court on the Defendants' Motion to Dismiss (Dkt. No. 6) and the Plaintiff's Motion to Strike Defendants' Affirmative Defense (Dkt. No. 15). The Plaintiff filed a memorandum in opposition to Defendants' Motion to Dismiss (Dkt. No. 13) and the Defendants replied (Dkt. No. 16). The Defendants also filed a memorandum in opposition to Plaintiff's Motion to Strike (Dkt. No. 17). The Court heard oral argument on both of these motions on July 8, 2010. For the following reasons, the Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**, and the Plaintiff's Motion to Strike is **DENIED**.

**I. Procedural History and Factual Allegations**

The Plaintiff, Ms. Angela VanBuren (hereinafter "Ms. VanBuren"), began employment with Defendant Virginia Highlands Orthopaedic Spine Center, LLC, (hereinafter "Virginia Highlands") on December 1, 2003. She was fired on March 25, 2008. Following her termination, she filed a charge of gender discrimination with the EEOC and received a "Notice of Right to Sue." On March 25, 2010, within 90 days of receipt of the "Notice of Right to Sue" letter, Ms. VanBuren filed her complaint in this Court.

Ms. VanBuren alleges in her complaint that within 10 days of beginning her employment at Virginia Highlands she began to be sexually harassed by her supervisor, Defendant Stephen A. Grubb, M.D. (hereinafter "Dr. Grubb"). Ms. VanBuren alleges that Dr. Grubb and Virginia Highlands permitted a work environment to exist that was sexually charged, hostile, intimidating and offensive to Ms. VanBuren. Specifically, Ms. VanBuren alleges that Dr. Grubb would hug her, rub her back, waist, breasts and other inappropriate areas, and attempt to kiss her and fondle her. She also alleges that he sent her love poems and, on one occasion, forced his way into her hotel room, attempted to grope and fondle her, and professed his love to her. Ms. VanBuren alleges that when she complained to Dr. Grubb, her supervisor, about the sexual harassment and hostile work environment at Virginia Highlands she was fired in retaliation. Ms. VanBuren asserts that all of these acts were in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e)-2(a) and 2000(e)-3(a). Ms. VanBuren also alleges that her termination at Virginia Highlands constituted a wrongful discharge in violation of Virginia public policy, and thus a violation of Virginia common law. See Bowman v. State Bank of Keysville, 229 Va. 534, 331 S.E.2d 797 (1985).

**II. Jurisdiction and Venue**

This Court possesses federal question subject matter jurisdiction over Ms. VanBuren's Title VII claims pursuant to 28 U.S.C. § 1331 because these claims arise under 42 U.S.C. §§ 2000(e)-2(a) and 2000(e)-3(a). Moreover, Ms. VanBuren has complied with the procedural and administrative requirements set forth in Section 706 of Title VII, 42 U.S.C. §2000e-5. The Court has supplemental jurisdiction over Ms. VanBuren's Virginia common law claim for wrongful discharge pursuant to 28 U.S.C. § 1367 because this claim is so closely related to her Title VII claims that "they form part of the same case or controversy." 28 U.S.C. § 1367(a). Venue is

proper in the United States District Court for the Western District of Virginia under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this district.

### III. Motion to Dismiss Analysis

#### A. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). And when evaluating a complaint under Rule 12(b)(6), courts must "accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Notwithstanding Federal Rule of Civil Procedure 8(a)(2), the Supreme Court has specified that pleadings which merely offer "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" are not sufficient. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007)). Thus, while "detailed factual allegations" are not required, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id.

#### B. Wrongful Discharge Claim Against Dr. Grubb

Plaintiff has asserted claims under both Title VII and Virginia common law against Virginia Highlands, but only claims under Virginia common law against Dr. Grubb individually. Rightfully so; it is immediately apparent that any Title VII claim against Dr. Grubb would be dismissed because Title VII does not apply to Dr. Grubb individually. Lissau v. S. Food Serv., Inc., 159 F.3d 177, 178 (4th Cir. 1998) ("Supervisors are not liable in their individual capacities

3

for Title VII violations."). Defendant has argued that the Virginia common law wrongful termination claim is constrained the same way Title VII is: applicable only to employers and not to individual supervisors. Plaintiff disputes the Defendants' interpretation of Virginia common law, and stresses that the relevant Virginia precedent permits plaintiffs to pursue wrongful discharge claims against individuals. Bowman v. State Bank of Keysville, 229 Va. 534, 331 S.E.2d 797 (1985). There is no dispute between the parties, however, as to the respective positions of the defendants: Virginia Highlands was the employer of Ms. VanBuren while Dr. Grubb was her supervisor. See Am. Comp. ¶¶ 11, 13.

Bowman stands as the foundation of Virginia's wrongful discharge precedent. Bowman created an exception to Virginia's common law doctrine of at-will employment that applies when an employee claims to have been discharged in violation of established public policy. Nevertheless, this Court does not believe that Bowman necessarily stands for the proposition that supervisors can be held individually liable in wrongful discharge suits. The individuals held liable by the Bowman Court were not sued in their role as supervisors; instead, they were all "members of the Bank's nine-person Board of Directors." Bowman, 229 Va. at 536, 331 S.E.2d at 799. The Bowman Court relied on this characterization of the individual defendants as Board members because the public policy implicated in Bowman revolved around the status of the employees as shareholders. "The Bank and the named Board members, by actions which violated securities and corporation laws, sought to influence the exercise of protected shareholder rights by bringing pressure to bear on the vulnerable employee relationship." Id., 229 Va. at 539, 331 S.E.2d at 800. Accordingly, when the Virginia Supreme Court "appl[ied] a narrow exception to the employment-at-will rule" and concluded that the plaintiffs had stated a cause of action in tort, the cause of action was specifically "against the Bank and the named

directors." Id., 229 Va. at 540, 331 S.E.2d at 801. Moreover, the Bowman Court specifically emphasized the trade-off between protecting public policy and preserving employment-at-will by referring to how the employer is constrained by this new exception: "the *employer* may not lawfully use the threat of discharge of an at-will employee as a device to control the otherwise unfettered discretion of a shareholder to vote freely his or her stock in the corporation." Id. (emphasis added).

A more recent precedent addressed precisely the same allegations as the instant case, but, unfortunately, it did not resolve the question of supervisor liability. In Mitchem v. Counts, 259 Va. 179, 523 S.E.2d 246 (2000), the Virginia Supreme Court permitted a wrongful discharge claim to proceed against a named individual. In Mitchem, the Virginia Supreme Court found that an employee who alleged that she was terminated for refusing to violate laws against fornication and lewd and lascivious behavior had stated a claim for wrongful discharge in violation of public policy. But although the named defendant in Mitchem was the individual who had engaged in the sexual harassment, the defendant was simultaneously, and more importantly, the employer. And it appears that the Virginia Supreme Court understood the individual to have been sued in his capacity as an employer, not a supervisor or co-employee. See Mitchem, 259 Va. at 183 n.1, 523 S.E.2d at 248 n.1 ("Her former employer Durwood Counts…was an insurance agent who at all times pertinent to this action, employed no more than five persons."); see also id., 259 Va. at 184, 523 S.E.2d at 249 ("In response, Counts (the employer) argues that…") (parenthetical in original). Notwithstanding the fact that the result in Mitchem was a wrongful discharge claim proceeding against a specific individual, the Mitchem Court's discussion of the Bowman doctrine supports the conclusion that Counts was sued as an *employer* – and employers are the only parties that may be held liable. For example, Mitchem

stresses that the employment-at-will doctrine is not meant to "serve as a shield for *employers* who seek to force their employees, under the threat of discharge, to engage in criminal activity." Id., 259 Va. at 190, 523 S.E.2d at 252 (emphasis added).

In neither Bowman nor Mitchem did the Virginia Supreme Court resolve whether supervisors can be held personally liable in wrongful discharge suits, so the Court must anticipate how the Virginia Supreme Court would rule on this matter.[1] See Wells v. Liddy, 186 F.3d 505, 527-28 (4th Cir. 1999). To predict how the Virginia Supreme Court would rule, this Court may consider canons of construction, treatises, "pronouncements of general rules or policies by the state's highest court," or "that court's well considered dicta." Liberty Mut. Ins. Co. v. Triangle Indus., Inc., 957 F.2d 1153, 1157 (4th Cir. 1992). For the reasons set forth below, the Court concludes that, were the Virginia Supreme Court to directly address this issue, it would find that wrongful discharge claims by an employee are cognizable only against the employer and not against supervisors or co-employees in their individual capacity.

### (1) Competing Approaches

This Court believes that the issue should be resolved simply enough – when the employee-employer relationship has been wrongfully terminated, liability to the wronged employee can only rest with the other party in that the relationship, the employer. It was this basic rationale, adopted from the reasoning of the North Carolina Supreme Court, that led this Court to previously hold that supervisory liability is not cognizable in Virginia. *See* Lucker v. Cole Vision Corp., 2005 WL 1411655, *3 (W.D.Va. 2005) (unpublished). But McFarland v. Va. Ret. Servs. of Chesterfield, L.L.C., 477 F. Supp. 2d 727 (E.D.Va. 2007), reached the contrary

---

[1] Lockhart v. Commonwealth Educ. Sys. Corp., 247 Va. 98, 106, 439 S.E.2d 328, 332 (1994), also did not answer this question as it only addressed whether terminations of employment because of discrimination based on gender or race fell within the scope of the Bowman doctrine. Again, the Supreme Court highlighted the status of the culpable parties as *employers*: "their employers misused the freedom to terminate services of at-will employees by purportedly discriminating against their employees on the basis of race and gender." Id.

conclusion on the principle that some Virginia precedent permits "an officer or director of a corporation [to be held] liable...for those intentional torts he or she commits or authorizes on behalf of the corporation." Id. at 739 (citing Airlines Reporting Corp. v. Pishvaian, 155 F. Supp. 2d 659, 666 (E.D.Va. 2001)). In McFarland, the court permitted a Bowman wrongful discharge claim against the executive director of the defendant LLC because the executive director "personally participated in or contributed to McFarland's alleged wrongful termination." McFarland, 477 F. Supp. 2d at 738. This Court believes it more likely that the Virginia Supreme Court would adopt the reasoning of the North Carolina Supreme Court than the reasoning of the McFarland court.

The Virginia Supreme Court is unlikely to conclude that Dr. Grubb should be held personally liable under the theory that "corporate officers may...be liable jointly and severally with their corporation for obligations arising out of tortious conduct of the officers that subject the corporation to liability." Sit-Set, A.G. v. Universal Jet Exch., Inc., 747 F.2d 921, 929 (4th Cir. 1984). Admittedly, this precept is well founded in Virginia law. See Miller v. Quarles, 242 Va. 343, 347, 410 S.E.2d 639, 642 (1991) ("An agent has a tort liability for injuries to a third party resulting from the agent's negligent act while acting within the scope of his employment by the principal."). But in a case of first impression, *e.g.* whether the tort of wrongful discharge can be committed by a supervisor or co-employee, this argument for supervisory liability begs the question. In other words, positing that Dr. Grubb should be held personally liable because the termination was "an intentional tort he or she commit[ted] or authorize[d] on behalf of the corporation" is merely an exercise in circular reasoning. Airlines Reporting Corp., 155 F. Supp. 2d at 666. It presupposes that Dr. Grubb, as a supervisor, is able to commit the intentional tort of wrongful discharge. And yet that is precisely the question with which the Court is concerned.

7

Of further concern, the McFarland Court's analysis, when specifically applied to the tort of wrongful discharge, would extend potential liability to any participant in the physical act of firing the employee. Wrongful discharge requires the personal participation of at least one member, manager or agent of an LLC, if for no other reason than someone must notify the terminated employee that they are being terminated. And McFarland appears to condone imposing individual liability solely on this slender reed of personal participation. Thus, this Court does not believe the Virginia Supreme Court would follow McFarland's conclusion that supervisors can be held individually liable in wrongful discharge suits.[2]

Most importantly, however, this Court believes that the policy rationales which the Virginia Supreme Court have found to underlie the Bowman doctrine suggest that the Virginia Supreme Court would likely not permit individual liability for supervisors in a wrongful discharge action. Instead, the Court believes that the Virginia Supreme Court would hold that only employers can commit the tort of wrongful discharge.

### (2) Bowman Claims Are Meant To Safeguard Employees Not Punish Supervisors

The impetus for permitting a wrongful discharge "Bowman" claim was, from the outset, to protect the vulnerable employee, not to sanction or punish any individual wrongdoer. *See* Bowman, 229 Va. at 539-40, 331 S.E.2d at 800-1 ("[the employer] sought to influence the exercise of protected shareholder rights by bringing pressure to bear on the vulnerable employee relationship...[but] the employer may not lawfully use the threat of discharge of an at-will employee as a device to control the otherwise unfettered discretion of a shareholder."). When

---

[2] McFarland relies too heavily on dicta from Lockhart v. Commonwealth, 247 Va. 98, 439 S.E.2d 328 (1994). Lockhart does not address the issue of whether a supervisor can be held individually liable in a wrongful discharge suit. Although the Lockhart Court remands the matter for further proceedings on other grounds, the holding expressly refers to the tortious actions of "their employers [who] misused the freedom to terminate the services of at-will employees by purportedly discriminating against their employees on the basis of race and gender." Id., 247 Va. at 106, 439 S.E.2d at 332.

the Virginia Supreme Court contrasted Mitchem with City of Va. Beach v. Harris, 259 Va. 220, 523, S.E.2d 239 (2000), a similar case rejecting a Bowman claim that was decided the very same day, the Court reinforced the conclusion that Bowman claims are designed to protect the employee. The Mitchem Court distinguished their holding from the Harris decision by explaining that "the officer in Harris was not a member of the public for whose benefit the statute was enacted, and, thus, could not state a claim for wrongful discharge based on the public policy embodied in that statute." Id., at 191 n.8, 523 S.E.2d at 253 n.9. *See also* King v. Donnkenny, Inc., 84 F. Supp. 2d 736, 740 (W.D.Va. 2000) ("Simply stated, the two exceptions to employment at will are that a plaintiff can maintain her suit where the termination results solely from her free exercise of a statutory right, or where the plaintiff belongs to a class of individuals protected by the public policy of a statute.") (citations omitted). The distinction made by the Donnkenny Court was also explained in Anderson v. ITT Indus. Corp., 92 F. Supp. 2d 516, 522 (E.D.Va. 2000). In Anderson, the Court specified that the plaintiff must show "either (i) a statutorily created right which the termination interferes with or violates (Bowman) or (ii) a statutorily-imposed duty which the employee is terminated for refusing to violate (Dray and Mitchem)." Id. Thus, courts have routinely recognized that the focus of the wrongful discharge issue has never been the malfeasance of the employer or a particular supervisor, but instead the protection of the employee as a member of the public.

Correspondingly, the Virginia Supreme Court has routinely refused to extend the Bowman doctrine to situations where wrongful termination did not infringe on an employee's rights or duties, even when an employer or supervisor was otherwise acting improperly. In Dray v. New Market Poultry Prods., Inc., 258 Va. 187, 518 S.E.2d 312 (1999), the plaintiff was terminated from her position as a quality control inspector at a chicken processing plant after she

informed governmental inspectors of unsanitary conditions. The Supreme Court determined that her wrongful discharge claims should be dismissed: "plaintiff seeks to mount a generalized, common-law "whistleblower" retaliatory discharge claim...such a claim has not been recognized as an exception to Virginia's employment-at-will doctrine, and we refuse to recognize it today." Id., 258 Va. at 191, 518 S.E.2d at 314. *See also* Miller v. SEVAMP, Inc., 234 Va. 462, 362 S.E.2d 915 (1987) (finding no wrongful discharge where an employee testified against her supervisor in a grievance hearing because "such a retaliatory act would impinge only upon private rights established by the employer's internal regulations"); Harris, 259 Va. 220, 523 S.E.2d 239 (finding no wrongful discharge where plaintiff was terminated for obtaining criminal warrants charging a superior officer with obstruction of justice because the plaintiff officer "was not a member of the public for whose benefit the statute was enacted"). If wrongful discharge claims are predicated on the protection and recompense of the wronged employee, the rationale for holding a supervisor individually liable is substantially reduced. The employee can recover only one sum that represents the employee's actual damages, and that sum will almost certainly be paid by the corporate defendant or employer, not the supervisor. Accordingly, there is no policy reason that a supervisor should also be held individually liable for the wrongful discharge.

### (3) Permitting Personal Liability Would Conflict With Virginia LLC Policy

This Court also believes that the Virginia Supreme Court would not extend the Bowman doctrine in this situation because such a result would effectively pierce the corporate veil of Virginia Highlands. Dr. Grubb was both the owner and medical director of Virginia Highlands, which he had organized as an Limited Liability Company. According to the Virginia Limited Liability Company Act, an LLC is an independent entity designed to shield its members and managers from personal liability. See VA. CODE ANN. § 13.1-1019; see also Hagan v. Adams

Prop. Assocs., Inc., 253 Va. 217, 220, 482 S.E.2d 805, 807 (1997) ("[An LLC] is an independent entity which can sue and be sued and its members are not personally liable for the debt or actions of the company."). It is a common way of limiting personal liability for a business venture because there can be no "personal obligation for any liabilities of a limited liability company, whether such liabilities arise in contract, tort or otherwise." Id. Thus, permitting plaintiffs to reach beyond the corporate veil, and disregard the "vital economic policy underlying the whole corporate concept," has routinely been described by the Virginia Supreme Court as an "extraordinary exception [that is] to be permitted only when it becomes necessary to promote justice." Cheatle v. Rudd's Swimming Pool Supply Co., Inc., 234 Va. 207, 212, 360 S.E.2d 828, 831 (1987). And the Virginia Supreme Court has unequivocally rejected any distinction between corporations and limited liability companies with respect to these protections. Gowin v. Granite Depot, LLC, 272 Va. 246, 254, 634 S.E.2d 714, 719 (2006) ("We find no difference between the entity forms that would justify applying the protection of the rule to actions of closely held corporations but not to actions of limited liability companies."). This Court believes that imposing liability in this situation, a result which would effectively pierce the corporate veil, would not be appropriate.[3]

Although it is commonly stated that the "decision of whether to disregard the corporate fiction depends largely upon resolution of questions of fact," the plaintiff in this case has not even alleged the necessary facts to justify piercing the corporate veil. Cheatle, 234 Va. at 212. In general, to pierce the corporate veil, the plaintiff must show that the corporate entity was the "alter ego, alias, stooge or dummy of the individuals sought to be charged personally and that the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime." Id. (citing Lewis Trucking Corp. v. Commonwealth, 207 Va. 23, 31, 147 S.E.2d 747, 753 (1966)).

---

[3] *But see* McFarland, 477 F. Supp. 2d 727.

Admittedly, Dr. Grubb appears to be the sole owner of Virginia Highlands, and this Court recognizes that in the case of the "one man corporation...courts have shown great liberality in lifting the veil and holding the sole shareholder and the corporation to be one and the same." Lewis Trucking Corp., 207 Va. at 32, 147 S.E.2d at 753. Nevertheless, the plaintiff has not alleged that Dr. Grubb employed the form of the LLC to "defeat public convenience, justify wrongs, or protect fraud or crime of another." Beale v. Kappa Alpha Order, 192 Va. 382, 399, 64 S.E.2d 789, 798 (1951).

Most importantly, the plaintiff has not alleged that Dr. Grubb must be held liable to guarantee a recovery in the event she is successful. Piercing the corporate veil is most common when there are allegations that the distinction between individual and corporate entity is meant to evade financial liability to the plaintiff. *See* C.F. Trust, Inc. v. First Flight Ltd. Partnership, 140 F. Supp. 2d 628 (E.D.Va. 2001) ("Defendant used the entities he owns and controls as part of his scheme to evade payment of plaintiffs judgments [thus] an action to pierce the veil is justified."). But there are no allegations that Virginia Highlands was set up or used by Dr. Grubb to "evade a personal obligation, perpetrate fraud or crime, to commit an injustice, or to gain an unfair advantage." O'Hazza v. Executive Credit Corp., 246 Va. 111, 115, 431 S.E.2d 318, 320 (1993). *See also* Karin Schwindt, Comment, *Limited Liability Companies: Issues in Member Liability*, 44 UCLA L. REV. 1541, 1552 (1997) ("When an LLC is used as an improper shield from personal liability...it is within the bounds of fairness to look beyond the shield and hold members personally liable for the LLC's actions."). Without such allegations or risk that financial liability will be avoided, it would be improper for the Court to effectively pierce the corporate veil and hold Dr. Grubb personally liable for the allegedly tortious employment decision of Virginia Highlands.

### (4) Permitting Non-Employer Liability Would Overly Broaden Doctrine

Starting in Bowman, the Virginia Supreme Court noted that the wrongful termination tort is "a narrow exception to the employment-at-will rule." Bowman, 229 Va. at 540, 331 S.E.2d at 801. Even in Mitchem, the most similar precedent to the instant case, the Virginia Supreme Court reiterated that the breadth of Bowman doctrine must remain narrow. See Mitchem, 259 Va. at 190, 523 S.E.2d at 252 ("We have narrowly construed the public policy exception to that doctrine, and we have applied that exception in few instances."). Many courts have recognized the Virginia Supreme Court's desire to limit the expansion of the Bowman doctrine. See Anderson, 92 F. Supp. 2d at 521 n. 14 (E.D.Va. 2000) ("More broadly, Dray, [258 Va. at 518,] stands for the proposition that the public policy exception does not encompass a generalized "whistleblower" retaliatory discharge claim, thereby evincing the Supreme Court of Virginia's intent to limit the expansion of the Bowman exception."); *see also* Devnew v. Brown & Brown, Inc., 396 F. Supp. 2d 665, 674 (E.D.Va. 2005). This Court believes that permitting non-employer liability for the tort of wrongful discharge may very well impermissibly broaden the Bowman doctrine beyond the scope that the Virginia Supreme Court would believe prudent.

This is particularly so because the Virginia Supreme Court originally suggested that the weight of other state authority was strongly in favor of the creation of the public policy exception in Bowman. Bowman, 229 Va. at 539, 331 S.E.2d at 801 ("The courts of at least 20 states have granted exceptions to the strict application of the doctrine in favor of at-will employees who claim to have been discharged in violation of an established public policy."). But across the nation state authority is profoundly split on the issue of permitting individual liability. This Court relied on the similarities of North Carolina and Virginia wrongful discharge law in previously holding that individual liability should not be permitted under Virginia law. *See*

Lucker, 2005 WL 1411655; *see also* Iglesias v. Wolford, 539 F.Supp.2d 831, 839 (E.D.N.C. 2008) (explaining that wrongful discharge claims are cognizable only against an employer). On the one hand, California, Illinois and Kansas follow North Carolina's rule and do not permit individual liability for wrongful termination claims.[4] On the other hand, Iowa, Arizona, New Jersey and West Virginia do permit individual liability.[5] In light of the split amongst other states as to this question, and the effect that permitting individual liability would have on the scope of the doctrine, this Court believes that the Virginia Supreme Court, rather than this Court, should be the one to expand the "narrow" exception of the Bowman doctrine.

### C. Claims Against Virginia Highlands

Both claims against Virginia Highlands meet the requirements to proceed at the motion to dismiss stage. First, Defendants did not challenge the sufficiency of the Title VII claim against Virginia Highlands. Defendants did challenge the sufficiency of the common law wrongful discharge claim against Virginia Highlands. Defendants' argument is unavailing and contrary to Virginia law. In fact, it is directly contradicted by authority upon which the Defendants relied in briefing the individual liability question. *See* Mitchem v. Counts, 259 Va. 179, 523 S.E.2d 246 (2000). As to the wrongful discharge claim against Virginia Highlands, Mitchem is directly on point.

### IV. Motion to Strike the Affirmative Defense

Plaintiff asserts that Paragraph 68 of the Defendants' answer should be struck from the pleadings because the allegations contained in Paragraph 68 violate Federal Rule of Civil

---

[4] *See* Reno v. Baird, 18 Cal.4th 640, 76 Cal.Rptr.2d 499, 957 P.2d 1333 (Cal. 1998) (supervisors may not be sued individually under common law actions for wrongful discharge); Buckner v. Atl. Plant Maint., Inc., 182 Ill.2d 12, 230 Ill.Dec. 596, 694 N.E.2d 565 (Ill. 1998) (same); Rebarchek v. Farmers Coop. Elevator, 272 Kan. 546, 35 P.3d 892 (Kan. 2001) (same).

[5] *See* Jasper v. H. Nizam, Inc., 764 N.W.2d 751, 777 (Iowa 2009) (liability for tort of wrongful discharge can extend to corporate officers who authorized or directed the discharge); Higgins v. Assmann Elecs., Inc., 217 Ariz. 289, 173 P.3d 453 (Ariz.Ct. App. 2007) (same); Ballinger v. Del. River. Port Auth., 173 N.J. 586, 800 A.2d 97 (N.J. 2002) (same); Harless v. First Nat'l Bank in Fairmont, 169 W.Va. 673, 289 S.E.2d 692 (W.Va. 1982) (same).

Procedure 12(f). *See* FED. R. CIV. PRO. 12(f) ("[T]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous material."). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 706-07 (1990). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." Id. at 711. Although the Court agrees Paragraph 68 is not an affirmative defense, Emergency One, Inc., v. Am. Fire Eagle Engine Co., Inc., 332 F.3d 264, 271 (4th Cir. 2003), it does not concur that the allegation in Paragraph 68 is entirely irrelevant.

Paragraph 68 "asserts affirmatively that any difficulties in plaintiff's marriage were likely due to the fact that she married…a registered sex offender." This assertion is neither immaterial nor impertinent to the matter at issue. In fact, this "assertion" is more properly deemed a denial, specifically a denial of the allegation in Paragraph 27 of the Complaint. "The harassment perpetrated by Dr. Grubb soon began to wreak havoc on Ms. VanBuren's marriage." Complaint, ¶ 27. This denial is neither immaterial nor impertinent because it directly relates to the scope of damages, as well as to the credibility of the plaintiff's allegations. Regardless of when Defendants learned of Ms. VanBuren's husband's criminal past, if the marital problems were caused by something other than what plaintiff alleges, then the denial is both material and pertinent. Moreover, the Court fails to appreciate how the criminal past of a non-party to the suit would be of such a scandalous nature that it would taint the jury. *Cf.* Alvarado-Morales v. Digital Equip. Corp., 843 F.2d 613, 618 (1st Cir. 1988) (striking from complaint terms such as "concentration camp," "brainwash," "torture," and references to "Chinese communists in Korea" as superfluous and scandalous in action arising from implementation of voluntary incentive

resignation plan). "Courts will usually strike so-called scandalous material only if it is irrelevant and immaterial to the issues in controversy." 2 MOORE'S FEDERAL PRACTICE 3D ¶ 12.37[3] at 12-100.4 (2007). As this is neither irrelevant nor immaterial, and recognizing that the "motion to strike is not a favored motion, at least in part because it is a drastic remedy," this Court finds that Paragraph 68 should not be struck from the answer. Lunsford v. United States, 570 F.2d 221, 229 (8th Cir. 1977).

## IV. Conclusion

It is clear that the Plaintiff has sufficiently pled her claims against Virginia Highlands to be allowed to proceed. It is a much closer question whether her supervisor, Dr. Grubb, may be held individually liable. This Court has found it unlikely that the Virginia Supreme Court would impose supervisory liability in actions based on the tort of wrongful discharge. Consequently, the Court concludes that Plaintiff has failed to state a claim against Dr. Grubb. Accordingly, the Defendant's Motion to Dismiss is **GRANTED in Part** and **DENIED in Part**.

The allegation contained in Defendants' answer is not an affirmative defense. Nevertheless, it does respond to and deny certain allegations made in the complaint and, therefore, does not warrant being struck from the pleading. Accordingly, the Plaintiff's Motion to Strike is **DENIED**.

An appropriate order shall issue this day. The Clerk of Court is directed to send a copy of this Memorandum Opinion and accompanying Order to counsel of record for the Plaintiff and counsel of record for the Defendants.

ENTER: This 28th day of July, 2010.

Senior United States District Judge